STATE OF CONNECTICUT *v.* ANGEL L. DEJESUS
(3033)

HULL, SPALLONE and BIELUCH, Js.

Argued February 13—decision released May 6, 1986

*Michael A. Connor, Jr.,* assistant public defender, for the appellant (defendant).

*Enrico Vaccaro,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, *Herbert Carlson,* assistant state's attorney, and *James G. Clark,* deputy assistant state's attorney, for the appellee (state).

SPALLONE, J. The defendant is appealing from a judgment of conviction after a trial to a jury of the charge of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). He claims as error the court's denial of his motion to suppress testimony and other evidence allegedly acquired through unduly suggestive identification procedures and challenges the court's deferral of his motion in limine by which the defendant sought to exclude the introduction of his prior conviction of arson in the third degree.

From the evidence adduced at trial, the jury could reasonably have found the following facts. On November 16, 1982, during the evening hours, Gary Walker and Mark Gionfriddo were visiting with John Orbel in Orbel's apartment in Hartford. At approximately 7:30 to 8 p.m., Walker went to get something from his car which was parked on the street about fifteen to twenty feet away and directly in front of the apartment window. Although it was not quite dark, the street lights were lighted and the lighting was good in the area.

While at his car, Walker was approached by three Puerto Rican males, all in their early twenties. Each was dark haired and had an average build. One was wearing a tan, knee length overcoat and hat. The second was wearing a maroon windbreaker and the third was wearing a waist length jacket. The man in the tan knee length overcoat asked Walker for a quarter. At that point all three men began harassing and pushing Walker. This confrontation lasted approximately three to five minutes, during which time Walker was no more than two to three feet away from the men, and he had an opportunity to view the face of the individual wearing the tan, knee length overcoat. After observing a "bulge" under that man's coat, Walker began to run toward the door of the apartment. Orbel and Gionfriddo, from the vantage point of the apartment window, observed the entire confrontation between Walker and the three Puerto Rican males. At this point, they left the apartment in order to assist Walker. Once outside, Gionfriddo observed that the Puerto Rican males were one foot away from Walker. Gionfriddo was approximately two to six feet away from the men and three to four feet away from the male wearing the tan overcoat, while Orbel was ten feet away and facing him. As Walker ran up the stairs to the apartment, the man in the tan coat ran up behind him and with an overhand thrust stabbed Walker in the back. After stabbing Walker, the man stated, "That'll teach you to mess with me," and then fled with the other two males.

Walker was taken to St. Francis Hospital by Gionfriddo and Orbel where he was treated for a stab wound which penetrated his back and lung. While at the hospital, Gionfriddo and Orbel were contacted by Officer Christopher Hopkins of the Hartford police department and were asked by him if they could identify the individual responsible for the stabbing. After indicating

that they could, they were taken to a police cruiser parked in front of the hospital. They both positively identified the defendant, who was sitting in the back seat of the cruiser still wearing the tan overcoat, as the person who stabbed Walker.

Owen Street, where the assault occurred, and St. Francis Hospital are in close proximity to each other. The defendant was apprehended in the area of the hospital after attempting to flee from a uniformed officer who was driving a marked cruiser.

At trial, Walker indicated that the defendant "very closely resembled" the man who stabbed him. Gionfriddo positively identified the defendant as the one who struck Walker. Orbel also identified the defendant as the perpetrator.

The defendant testified at the trial and admitted that he was wearing a long tan coat on the night in question, that he had dark hair and an average build and that he was one of the three Puerto Rican males involved in the confrontation with Walker. However, he denied stabbing Walker and claimed that the stabbing was done by his nephew, whom he described as being sixteen years of age, having a heavy build and wearing a double breasted tan cashmere overcoat. He also claimed that his nephew was somewhere in New York.

Following a trial to the jury, the defendant was found guilty as charged and subsequently the court denied the defendant's motion for acquittal.

## MOTION TO SUPPRESS IDENTIFICATION

At the hearing to suppress identification testimony, Orbel testified that he observed the incident both through the window and on the street. He testified that one of the men was wearing a tan single breasted, three-quarter length coat, was approximately five feet

eight inches tall and between twenty-one and twenty-three years of age, while another wore a green windbreaker and the third a waist length coat. Orbel further testified that he was twenty feet away inside the apartment when he first observed the confrontation between Walker and the three individuals. After he ran outside, he observed Walker bleeding and gasping for air and noted the defendant was three feet away from Walker. He heard the defendant say: "That'll teach you to fool around with me." At this point, Orbel was facing the defendant and was about ten feet away from him. Further, Orbel testified that after taking Walker to the hospital he and Gionfriddo were asked by a police officer if they could make an identification. He testified that he and Gionfriddo were escorted to a cruiser by the officer who asked: "Do you recognize any individual out there at all?" Orbel stated that he looked around and into the cruiser and identified the defendant as the individual who stabbed Walker. After being asked by the officer if he was positive, Orbel testified that he took a closer look and affirmed his identification.

Gionfriddo testified that he was in the apartment with Orbel when he observed the three individuals harassing Walker. He described them as three Puerto Rican males between the ages of twenty and twenty-five. In describing the men individually, he testified that one of the men was wearing a knee length tan coat and a hat and had a mustache and a little beard, the second was wearing a maroon jacket and the third a waist length green jacket. Gionfriddo testified that after observing the confrontation from inside the apartment, he went outside and, when he was four to six feet away from the men, saw the Puerto Rican male in the tan coat run up behind Walker and "poke" him in the back with an overhand thrusting motion. Gionfriddo also testified that during the stabbing he was four feet away

from the face of the man and that he had seen his face for a total of five minutes during the incident. A half hour after the assault, he was asked by a police officer to "see if he recognized anybody." He testified that the police did not use the word "suspect" in conducting the identification procedure. Gionfriddo testified that he walked outside of the hospital and saw the defendant seated in the back seat of the cruiser and identified him as the assailant.

Hopkins testified that during the identification procedure, the defendant, wearing a beige overcoat, was seated alone in the back seat of the cruiser. He stated that he had picked up the defendant on an unrelated matter in the vicinity of St. Francis Hospital and heard, over his police radio, that a man, whose description matched that of the defendant, was wanted in connection with a stabbing incident. He requested that the witnesses to the assault be brought to the cruiser which was then parked in front of the hospital. Hopkins testified that he asked Gionfriddo and Orbel if they could identify Walker's assailant. They indicated affirmatively and both positively identified the defendant who was seated in the cruiser as the person who stabbed Walker.

Following the hearing on the defendant's motion to suppress, the court ruled that the identifications in issue were reliable and therefore admissible even if suggestive and denied the defendant's motion to suppress identification testimony.

In his claim that the court erred in denying his motion to suppress identification testimony and evidence, the defendant specifically avers that the witnesses' identifications of him while he was seated alone in the cruiser twenty minutes after the crime and in its vicinity were unnecessarily suggestive, unreliable under the circumstances and violative of the due process clause of the United States constitution. We disagree.

A two pronged analysis is required when a determination is being made of whether identification procedures violate a defendant's due process rights. First, it must be determined whether the identification procedure was unnecessarily or impermissibly suggestive and second, if it is found to have been so, it must be determined whether the identification was nevertheless reliable based on the totality of the circumstances. *Manson* v. *Brathwaite,* 432 U.S. 98, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977); *Neil* v. *Biggers,* 409 U.S. 188, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972); *State* v. *Hamele,* 188 Conn. 372, 376, 449 A.2d 1020 (1982); *State* v. *Brown,* 187 Conn. 602, 615, 447 A.2d 734 (1982); *State* v. *Theriault,* 182 Conn. 366, 372, 438 A.2d 432 (1980); *State* v. *Willin,* 177 Conn. 248, 251, 413 A.2d 829 (1979); *State* v. *Soriano,* 2 Conn. App. 127, 131, 476 A.2d 633 (1984).

In this case, the defendant urges upon us the proposition that the identifications made by Gionfriddo and Orbel were impermissibly suggestive because they were conducted while the defendant was seated alone in the back of the cruiser. The defendant argues that a lineup and voice identification were required. It has been held repeatedly, however, that one man confrontations do not per se constitute a denial of due process of law. *Simmons* v. *United States,* 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *Biggers* v. *Tennessee,* 390 U.S. 404, 88 S. Ct. 979, 19 L. Ed. 2d 1267, reh. denied, 390 U.S. 1037, 88 S. Ct. 1401, 20 L. Ed. 2d 298 (1968); *Stovall* v. *Denno,* 388 U.S. 293, 87 S. Ct. 1967, 18 L. Ed. 2d 1199 (1967); *State* v. *Carnegie,* 158 Conn. 264, 269, 259 A.2d 628, cert. denied, 396 U.S. 992, 90 S. Ct. 488, 24 L. Ed. 2d 455 (1969). It has been recognized that prompt on-the-scene confrontations tend under some circumstances to insure accurate identifications and that the benefits of promptness not only aid reliability but permit a quick release of an innocent

party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay. *United States ex rel. Kirby* v. *Sturges,* 510 F.2d 397 (7th Cir. 1975); *Bates* v. *United States,* 405 F.2d 1104 (D.C. Cir. 1968); *State* v. *Willin,* supra, 252; *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976).

Even if the identification procedures in this case were deemed to be suggestive, that fact would not necessarily require that the identification evidence be suppressed. The United States Supreme Court refused to adopt a per se exclusionary rule with respect to "unnecessarily suggestive" identification procedures, holding instead that the admissibility of such evidence should be determined by "the totality of the circumstances." *Neil* v. *Biggers,* supra, 199. In *Manson* v. *Brathwaite,* supra, 114, it was stated that "reliability is the linchpin in determining the admissibility of identification testimony . . . ."

The factors to be considered in determining reliability are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of any prior description of the perpetrator, the level of certainty demonstrated at the confrontation and the length of time between the crime and the confrontation. *Neil* v. *Biggers,* supra, 200. In applying these standards to this case it is apparent that there were sufficient indicia of reliability to support the decision of the trial court denying the defendant's motion to suppress the identification evidence. We agree with the ruling of the trial court.

## MOTION IN LIMINE

The defendant claims further that the court erred when it failed to rule on his motion in limine prior to the voir dire. By that motion, the defendant sought to exclude the introduction of his prior conviction of arson in the third degree. The defendant claimed that the prejudicial effect of this evidence would outweigh its

probative value. He contended that his motion should be granted prior to the selection of the jury in order that his prior conviction not be revealed during the voir dire proceeding. The court deferred action on the defendant's motion until trial. The motion was resubmitted at trial and was granted.

The record is devoid of any transcript of the voir dire proceeding. We have no way of knowing what questions were asked. Without a transcript we have nothing by which we can measure whether the proceedings were prejudicial to the defendant. In this case, it was incumbent upon the defendant to supply us with an adequate record for review. *Grunschlag* v. *Ethel Walker School, Inc.*, 189 Conn. 316, 320, 455 A.2d 1332 (1983). " 'This court cannot resort to matters extraneous to the formal record, to facts which have not been found and which are not admitted in the pleadings, or to documents or exhibits which are not part of the record. See *Gould* v. *Gould,* 164 Conn. 387, 389, 321 A.2d 443 [1973]; *American Can Co.* v. *Orange Pulp Co.,* 149 Conn. 417, 418, 180 A.2d 628 [1962].' *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 465, 378 A.2d 547 (1977)." *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 28, 453 A.2d 769 (1983). Absent an adequate record, we refuse to speculate as to what impact the court's deferring its decision on the defendant's motion in limine had on the jury selection process.

We hold that the trial court, in denying the defendant's motion to suppress the identification testimony and evidence, acted properly and in accordance with the law. Further, we decline to rule on the defendant's claim with regard to his motion in limine because he has not furnished us with an adequate record on this point.

There is no error.

In this opinion the other judges concurred.