STATE OF CONNECTICUT *v.* JULIO ARROYO, JR.
(5456)

DUPONT, C. J., BIELUCH and FOTI, Js.

Argued January 14—decision released March 29, 1988

*Martin Zeldis,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Leah Hawley,* deputy assistant state's attorney, with whom, on the brief, was *Paul Soulsby,* assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims on appeal that the court erred (1) in denying his motion to suppress his identification, (2) in allowing the state to recall a witness, (3) in enforcing a sequestration order, (4) in its instructions to the jury, and (5) in allowing the defendant's statement into evidence. We find no error.

From the evidence presented, the jury could reasonably have found the following facts. On Thursday, September 21, 1985, in the late afternoon, Donald Penwarden was stabbed while walking on a street in New Britain. Penwarden lived in New Britain and worked for Amodio Movers. After leaving work at 4:30 p.m., he went to a bar where he consumed at least two alcoholic drinks. After leaving the bar he spotted the defendant whom he thought was a former coworker who had borrowed money from him. Penwarden asked for the return of the money, and when the defendant denied ever working at Amodio and owing Penwarden money, a brief fight ensued. Thereafter, Penwarden continued his walk when a few minutes later he heard someone yell "Hey, hey, hey." He turned and saw three "kids" on bicycles and a fourth, whom he recognized as the one he had just fought, running at him with a knife in his hand. He knocked the defendant to the ground while trying to get the knife away from him. The defendant got up, opened the knife and began swinging it wildly. Penwarden became frightened and started running away. He was chased, stabbed by his assailant in the chest and began bleeding profusely. After the stabbing, all of the "kids," including the assailant, ran away. A

passing motorist, Patricia Gomes, saw what had happened and drove the victim to the hospital where he was operated on for a large stab wound in the right ventricle of his heart. Penwarden was released from the hospital about two weeks later.

I

The defendant's first claim is that the trial court erred in denying his motion to suppress an out-of-court identification and by admitting a subsequent in-court identification. The defendant claims that the out-of-court identification was unnecessarily suggestive and unreliable under the totality of the circumstances, thereby tainting the in-court identification.

The following facts are relevant to the defendant's claim. On October 8, 1985, eighteen days after the incident, an anonymous phone call was received by the police indicating that the defendant was the person responsible for the assault. The defendant was not at home when the police arrived there a few hours later. That same day at approximately 12 noon, the defendant, his father and a female friend appeared at police headquarters, where he denied any involvement in the assault. He was not placed under arrest, nor was he in police custody at this time. While the defendant was being interviewed, the police called Penwarden and asked that he come to police headquarters. While being transported, Penwarden was told by the police that there was a suspect they wanted him to see. The police vehicle was parked one hundred to two hundred feet outside of headquarters. Five to ten minutes later the defendant emerged and Penwarden spontaneously stated that the defendant looked like his assailant. In order to obtain a closer view, the officers followed the defendant to a nearby parking lot where they pulled up alongside of the defendant's vehicle. At this point, Penwarden positively identified the defendant as his

assailant. The defendant claims that this identification was unnecessarily suggestive.

The due process clause of the fourteenth amendment to the United States constitution requires the exclusion of identification evidence when the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. *Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968); *State* v. *Doolittle,* 189 Conn. 183, 190, 455 A.2d 843 (1983). "In order to establish that a pretrial identification procedure has violated a defendant's constitutional right to due process, the defendant must prove (1) that the identification procedure was unnecessarily suggestive, and (2) that the resulting identification was not reliable under the totality of the circumstances." *State* v. *Hunt,* 10 Conn. App. 404, 407, 523 A.2d 514 (1987). Whether such an identification procedure is unnecessarily suggestive, depends on the facts and circumstances of each case. *State* v. *Findlay,* 198 Conn. 328, 337–38, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986).

Addressing the defendant's claim that the identification procedure was unnecessarily suggestive, we find that the trial court had sufficient evidence to support its conclusion to the contrary.

Even if we were to assume, arguendo, that the identification procedure in this case was impermissibly suggestive, the identification was nevertheless reliable under the totality of the circumstances. See *State* v. *Hunt,* supra, 409. Penwarden was able to observe the defendant closely on the day of the incident, first during the initial argument and then for about ten minutes during the assault. He was able to and did in fact give a description of the assailant to the police. Only eighteen days had elapsed between the day of the stab-

bing and that of the identification. When the defendant emerged from police headquarters, Penwarden spontaneously identified the defendant as looking like the assailant and, upon a closer look, positively identified him. Penwarden's "reluctance to make an immediate uncategorical identification of the defendant is not evidence of an initial misidentification but rather demonstrates the conduct of a witness exercising independence of judgment under stressful circumstances." *State* v. *Perez,* 198 Conn. 68, 74, 502 A.2d 368 (1985). Under the totality of circumstances, the out-of-court identification was reliable, and the trial court did not err in refusing to suppress it.

Since the out-of-court identification was admissible, it could not have tainted the in-court identification made four months thereafter. *State* v. *Guertin,* 190 Conn. 440, 458, 461 A.2d 963 (1983).

## II

The defendant next argues that the court improperly permitted a witness to be recalled during the state's case-in-chief in order to make an in-court identification.

Patricia Gomes, an eyewitness to the assault, described, during her testimony, the assailant of Penwarden, but was unable to identify that person in court. The defendant, at the time, was sitting in the spectator section. Two days later, the state sought to recall her as a witness-in-chief for the purpose of making an identification. Gomes testified, in limine, that she had not recognized the defendant initially because his hair was a different color and style and because he was slouched down in his chair. Later during her testimony, the defendant turned his head and she recognized his profile; she attempted to tell a sheriff as she left the courtroom but was unsuccessful. After court was adjourned, she went to the state's attorney's office where she told Penwarden that she now recognized the defendant as

his assailant; she then told the state's attorney the same when he came into the office.

The trial court has broad discretion in determining whether to permit a witness to be recalled. See *State* v. *Reed,* 174 Conn. 287, 304, 386 A.2d 243 (1978); *State* v. *Vandemark,* 77 Conn. 201, 206, 58 A. 715 (1904). In determining whether the trial court abused its discretion, every reasonable presumption should be given in favor of the trial court's ruling. *State* v. *Mitchell,* 8 Conn. App. 598, 604, 513 A.2d 1268, cert. denied, 201 Conn. 801, 516 A.2d 887 (1986).

Our review of the record, transcript and briefs fails to disclose any abuse of the court's discretionary function in allowing the recall of the state's witness. The court specifically found that the state had not initiated contact with Gomes, but rather that it was she who had approached the state's attorney, claiming that she had not had a sufficient opportunity to view those in the courtroom when she first testified, and that the defendant's seat selection, at the back of the courtroom, had obscured her view of the defendant.

The defendant further contends that the in-court identification of him by Gomes was made under impermissibly suggestive circumstances and was not reliable. We cannot agree.

The witness made no pretrial identification. The only identification made was in court. "Generally, an in-court testimonial identification need be excluded, as violative of due process, only when it is tainted by an out-of-court identification procedure which is unnecessarily suggestive and conducive to irreparable misidentification." *State* v. *Smith,* 200 Conn. 465, 469, 512 A.2d 189 (1986). The fact that the defendant may have been the only person in the courtroom resembling the assailant does not make such a confrontation unnecessarily suggestive. " '[W]ithout more, the mere exposure

of the accused to a witness in the suggestive setting of a criminal trial does not amount to the sort of impermissible confrontation with which the due process clause is concerned.' *Middletown* v. *United States,* 401 A.2d 109, 132 (D.C. App. 1979)." *State* v. *Smith,* supra, 470. The defendant's right to cross-examination is his protection against the suggestiveness in any in-court identification confrontation, and any such weakness in that identification is grounds for assailing its weight rather than its admissibility. Id.

## III

The defendant next contends that the court abused its discretion by excluding the defendant's brothers from the courtroom at the time Gomes gave her in-court identification of the defendant. In particular, the defendant claims the court erred in denying him a public trial by enforcing its sequestration order pursuant to General Statutes § 54-85a.[1]

The court granted the prosecution's request for sequestration during Gomes's testimony by excluding anyone who was a witness or a potential witness from the courtroom. The sequestration statute is unambiguous in its requirement that upon the request of either the prosecution or the defense, any witness may be sequestered during any portion of a trial "in which he is not testifying." General Statutes § 54-85a. Here, the court did no more than comply with the express language of the sequestration statute when it excluded the defendant's brothers who were potential witnesses.

Nor is there any merit to the defendant's claim that he was denied a public trial in violation of his sixth and

[1] General Statutes § 54-85a provides: "SEQUESTERING OF WITNESSES IN CRIMINAL PROSECUTION. In any criminal prosecution, the court, upon motion of the state or the defendant, shall cause any witness to be sequestered during the hearing on any issue or motion or any part of the trial of such prosecution in which he is not testifying."

fourteenth amendment rights under the United States constitution and article first, § 8 of the Connecticut constitution. The defendant concedes that the court only excluded witnesses and potential witnesses from the courtroom. It is undisputed that the defendant's brothers were potential witnesses. Thus, we are unable to conclude that the defendant was denied a public trial as the court's order was limited to witnesses. *State* v. *Sheppard*, 182 Conn. 412, 415, 438 A.2d 125 (1980).

Finally, we note that the defendant's claim that the prosecution subpoenaed the defendant's brothers for the sole purpose of excluding them is not supported by the record. We, therefore, decline to consider this claim.

## IV

The defendant next contends that the trial court erred in its instruction to the jury by telling them to focus their attention on a witness' identification of the defendant as Penwarden's assailant rather than her initial failure to identify him. The defendant claims this violated his rights to due process and a trial by an impartial jury.

The court, early in its instructions, made it clear that it was the jury's recollection of the facts and evidence which should be given weight during their deliberations.[2] Later, in its instructions, the court commented on the in-court identification, which constitutes the basis of the defendant's appeal on this issue. Because

[2] The court instructed as follows:

"Now, I will be making some comments to you on the facts of the case and as to the weight of the evidence and also as to whether or not it is proper for you to find certain facts from the evidence or that it would be proper to find certain facts from the evidence but whenever I make any comments on the facts or on the evidence in this case, no matter how I may say them to you, they nevertheless are purely suggestive and it is up to you to decide whether or not I am right or wrong in my evaluation of the facts or comments on the facts.

"It is up to you, in other words, to approve or disapprove of my judgment of the facts. My main reason for referring to any of the facts and

the defendant has raised this claim for the first time on appeal, we will limit our review to determining whether the alleged error infringed on the defendant's right to a fair trial. *State* v. *Mack,* 197 Conn. 629, 638, 500 A.2d 1303 (1985); *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973).

The portion of the charge challenged was as follows:

"A fifth factor is whether or not the identification by the eyewitness is the product or the result of that witness's own recollection.

"Now, with respect to Patricia Gomes, in all of her testimony, as I recall, there is no indication that her identification of Mr. Arroyo was suggested to her by anybody else. Perhaps the critical time to focus in connection with this factor of suggestibility is the second time that she came to testify here in court.

"Now, she said, as I remember, that she was appearing here in court at her own wish. It was her own desire to do so. This was based on the fact that after she had been asked a crucial question during her first appearance in court, she had come to recognize the defendant on her own by observing him here in the court."

Shortly thereafter, the court instructed that the final factor to be considered in respect to eyewitness identification, that of the credibility of the witness as follows:

"Now, with respect to the certainty of Miss Gomes's identification of the defendant, everyone I am sure

testimony of the evidence in the case is simply to make clear to you how the applicable law applies in this particular case.

"So if I refer to certain facts or evidence, you are not to assume that I mean to emphasize those facts or that evidence and that you should in any way limit your consideration only to them. If I do not mention any evidence or facts, you will supply it from your own recollection and if I should incorrectly state any evidence, you would in your judgment, correct any error that I might make and apply your own recollection."

will recall that when she was asked that question by Mr. Soulsby—'Can you identify the defendant? Do you see him here in the court room?'—the first time she said, 'No,' she didn't.

"She testified later, however, that after she first said that, she had an opportunity to observe him more carefully or to observe all the people in the courtroom more carefully and at that time she said she spotted him and that was the impetus for her coming back into court. When she came back into court the second time, she said that although the hair is shorter and darker, that there is a facial resemblance and that, therefore, she could make an identification."

The trial court first enumerated the factors which the jury must consider when evaluating identification testimony, then commented on the evidence which was relevant to each of those factors. The statements the defendant challenges were proper comment on the evidence which was relevant to the issue of identity. Although the court may have inadvertently and inaccurately told the jury that Gomes was asked "Can you identify the defendant," when in fact she was asked if she could identify the "assailant," such error was of no significance, and could not have misled the jury, particularly in view of the court's admonition that the jury's recollection should control.

The defendant concedes the "trial court may, in its discretion, make reasonable comments on the evidence." *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985). The issue is whether the charge, read as a whole, presents the case to the jury so that an injustice will result. *State* v. *Truppi,* 182 Conn. 449, 458, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981). In reviewing the charge as a whole, we cannot find that the court instructed or otherwise advised the jury how to decide

the case, nor did it improperly convey to that jury its opinion concerning the facts. Taken as a whole, the court's instruction did not paint a blatantly one-sided picture which bolstered Gomes's credibility, emphasizing her identification of the defendant as the assailant more than her initial failure to do so.

V

Finally, the defendant claims that his rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8 of the Connecticut constitution were violated when the state was permitted to introduce his statement into evidence in the absence of proof that such statement was preceded by a complete, accurate and understandable advisement of his rights, or that he had intelligently waived such rights.

The pertinent facts to this claim are as follows. On October 8, 1985, at 12:30 p.m., the defendant, his father, and a woman friend went to police headquarters. The defendant understood and was able to communicate in English. After being advised of his rights in English, the defendant was given and signed a rights waiver form. He refused to voluntarily give a photograph, but, in response to a question, stated that he had been in a fight with a man wearing an Amodio shirt on Richard Street on September 21, 1985, but not on Myrtle Street. He refused to make a written statement and left the station.

During the trial, the defendant filed a motion in limine to have his initial statement and his subsequent refusal to be photographed and respond to questions excluded as prejudicial and violative of his right to remain silent. The trial court granted the motion in part finding that, although the defendant arrived at the police station voluntarily and was advised of his rights, he could have had some idea of a custodial atmosphere in his mind. The trial court allowed into evidence the

defendant's initial responses to the questions he was asked while he was in the police station, but excluded evidence of his refusal to be photographed and answer further questions.

Although this claim was not properly preserved at trial, we find that it is reviewable under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The claim that the defendant raises is an issue which, "by its terms, implicates a fundamental constitutional right." *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The record, however, does not adequately support the defendant's claim that the ruling by the trial court, allowing his initial statement into evidence, was of constitutional proportions. Id.

" 'Before one suspected of the commission of a crime is entitled to the warnings constitutionally required by *Miranda,* two conditions are required: the suspect must be in the custody of law enforcement officials . . . and the suspect must be subjected to interrogation.' (Citations omitted.) *State* v. *Vitale,* 197 Conn. 396, 411, 497 A.2d 956 (1985); see *State* v. *Stankowski,* 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1042, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981)." *State* v. *Doehrer,* 200 Conn. 642, 646, 513 A.2d 58 (1986), quoted in *State* v. *Palmer,* 206 Conn. 40, 62, 536 A.2d 936 (1988). The first condition was not met here.

A person is in custody only if, in view of all of the surrounding circumstances, a reasonable person would have believed that he was not free to leave. *State* v. *Brown,* 199 Conn. 47, 53, 505 A.2d 1225 (1986). The defendant voluntarily arrived at police headquarters. He was not placed under arrest. He refused to be photographed and declined to make a written statement. He was free to leave at any time he wanted and did leave within twenty minutes. Thus, the interview of the

defendant was not a custodial interrogation. "[S]tatements made by a defendant are admissible in evidence whether or not the *Miranda* warning has been given when the statements were not made during the course of a 'custodial interrogation.' " *State* v. *Ferrara,* 176 Conn. 508, 519–20, 408 A.2d 265 (1979), quoted in *State* v. *Doehrer,* supra, 648. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him in custody. *State* v. *Shashaty,* 205 Conn. 39, 48, 529 A.2d 1308 (1987). Accordingly the court did not err in permitting the statement to be placed into evidence.

There is no error.

In this opinion the other judges concurred.