MICHAEL D. WILLIAMS *v.* GEORGE W.
BRONSON, WARDEN
(7300)

DUPONT, C. J., SPALLONE and BARNETT, Js.

Argued November 14, 1989—decision released April 17, 1990

*Neal G. Cone,* special public defender, for the appellant (petitioner).

*John O'Meara,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Edward Ricciardi,* assistant state's attorney, for the appellee (respondent).

DUPONT, C. J. The petitioner was convicted, after a trial to the court, *Falsey, J.,* of the crimes of burglary in the second degree in violation of General Statutes § 53a-102 (a) and of interfering with a police officer in violation of General Statutes § 53a-167a (a). He was sentenced to a term of imprisonment of seven years and four months, followed by three years of probation. The convictions were upheld in *State* v. *Williams,* 205 Conn. 456, 534 A.2d 230 (1987). The petitioner subsequently filed a petition for a writ of habeas corpus based on an allegation of ineffective assistance of counsel. After a hearing, the habeas court denied his petition and certified its decision for review by this court. We find no error.

The underlying facts are set out in detail in *State* v. *Williams,* supra, 457–58. We summarize those facts relevant to the issues in the present appeal. The victim met the petitioner at the home of a friend. The petitioner offered to sell the victim a tape player, which she agreed to buy. He then accompanied her on the five or ten minute walk to her apartment so that she could get the money for the purchase. After the sale was completed, the petitioner left the apartment, and the victim locked up and went to bed, leaving the kitchen partially illuminated by a pantry light and a porch light. Between 3:30 and 4 a.m., she awoke and, from her bed, saw a man leaning over her kitchen table with his back to her. When she screamed, he turned and looked at her. She then telephoned the police, describing the intruder as a black male wearing a blue jacket, gray pants, a light cap and sunshades.

The police broadcasted a description of the intruder on the police radio. About four minutes after the call was broadcast, the petitioner was stopped, 200 yards from the victim's home, by two officers in a patrol car, and he was informed that he fit the description of a suspect in a burglary that had just occurred nearby. He was also informed that the victim was being brought to the site to see if she could identify him as the intruder. The petitioner then created a disturbance, as a result of which he was forcibly subdued, handcuffed and arrested on a charge of breach of the peace. Upon the victim's arrival, she positively identified the petitioner as the intruder. Later that day, she informed police that the petitioner was also the man who had sold her a tape player a few hours earlier that evening. At trial, she again identified the petitioner as the intruder.

Following his conviction and the denial of his habeas corpus petition, the petitioner appeals claiming that the habeas court erred in not finding that he had ineffec-

tive assistance of counsel (1) as to the issue of the identification of him as the perpetrator, and (2) as to his plea. The habeas court's decision was based on its finding of insufficient prejudice as to the identification issue and on the petitioner's failure to sustain his burden of proving by a preponderance of the evidence the inadequacy of the advice of counsel as to the plea entered.

The right to effective assistance of counsel is assured by the sixth and fourteenth amendments to the federal constitution and article first, § 8, of the Connecticut constitution. The right of a defendant to effective assistance is not, however, the right to perfect representation. *State* v. *Barber,* 173 Conn. 153, 159–60, 376 A.2d 1108 (1977); *Chace* v. *Bronson,* 19 Conn. App. 674, 678, 564 A.2d 303 (1989). To prevail on a claim of denial of effective assistance, the petitioner bears the burden of proving that the services provided him by trial counsel were not reasonably within the range of competence possessed by lawyers with ordinary training and skill in the criminal law. *Levine* v. *Manson,* 195 Conn. 636, 639, 490 A.2d 82 (1985). He must also show "that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." *Herbert* v. *Manson,* 199 Conn. 143, 144–45, 506 A.2d 98 (1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. *Levine* v. *Manson,* supra, 640; *Chace* v. *Bronson,* supra, 678. The assistance must be viewed in light of the circumstances that existed at the time, and not with either the benefit or the distortions of hindsight. *Levine* v. *Manson,* supra. Even if that assistance is found to have been lacking in competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. *Aillon* v. *Meachum,* 211 Conn. 352, 357, 559 A.2d 206 (1989).

We turn first to the petitioner's claim that his attorney's failure to challenge the show-up identification of the petitioner was ineffective assistance of counsel. For the petitioner's motion to suppress to have succeeded, the court would have to determine that the procedure was unnecessarily suggestive and that, in the totality of the circumstances, it was unreliable. *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). The petitioner claims that the show-up procedure was unnecessarily suggestive because (1) prior to the victim's arrival at the scene of the show-up, the police had informed her that they had the suspect, (2) he was presented to the victim for identification in handcuffs and "flanked by police officers," and (3) he was the sole subject of the show-up.

Almost any one-to-one identification procedure is suggestive because it conveys to the viewer that police have reason to believe that the lone subject of the viewing is guilty. *State* v. *Middleton,* 170 Conn. 601, 608, 368 A.2d 66 (1976). It would be difficult, therefore, to argue that the show-up in this case was not suggestive, but whether it was *unnecessarily* so is the question.

"[P]rompt on-the-scene confrontations tend under some circumstances to ensure accurate identifications and . . . the benefits of promptness not only aid reliability but permit a quick release of an innocent party if there is no positive identification, allowing the police to resume the investigation with only a minimum of delay." *State* v. *DeJesus,* 7 Conn. App. 309, 315–16, 508 A.2d 463 (1986); *State* v. *Sims,* 12 Conn. App. 239, 242, 530 A.2d 1069 (1987), cert. denied, 206 Conn. 801, 535 A.2d 1315 (1988). Here, the show-up procedure was held less than an hour after the burglary was committed and the petitioner was stopped, approximately one block from the scene of the break-in, only four minutes

after the victim's call. The race, sex, clothing and sunglasses of the petitioner fit the description of the intruder that the victim had just given.

The promptness of the show-up in this case aided reliability and would have made possible the immediate release of the petitioner if the victim had not identified him, thus minimizing the limitation on the petitioner's liberty. The police officers at first merely asked the petitioner to sit in the police car to await the arrival of the victim. It was the petitioner's own conduct in creating a disturbance that necessitated that he be subdued, handcuffed, "flanked by police officers" and placed under arrest. Under these circumstances, the show-up was not *unnecessarily* suggestive.

Even if the show-up had been unnecessarily suggestive, the identification was not unreliable in the totality of the circumstances surrounding the identification, based on the five factors enunciated in *Manson* v. *Brathwaite,* 432 U.S. 98, 114–16, 97 S. Ct. 2243, 53 L. Ed. 2d 140 (1977).

Here, although the victim's opportunity to view the petitioner was brief, she must have seen him clearly enough and for long enough to be able to testify that he looked at her, that he was a black man and that he was wearing gray pants, a blue jacket, a light cap and sunshades. A view of even a few seconds may be sufficient for a witness to make an identification. *State* v. *Piskorski,* 177 Conn. 677, 743, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). This court has held similarly. *State* v. *Cubano,* 9 Conn. App. 548, 553–54, 520 A.2d 250 (1987); *State* v. *Tate,* 9 Conn. App. 141, 146, 516 A.2d 1375 (1986). It is for the trier of fact to determine the weight to be given that identification. *State* v. *Mitchell,* 204 Conn. 187, 202–203, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).

The degree of attention paid by the victim in this case was sufficient to enable her to give police the previously cited description, nearly simultaneously with her observation of him. The petitioner has offered no evidence to suggest any inaccuracy or uncertainty in either her description or her identification of him as the intruder. These factors indicate that the victim had the ability to make a reliable identification, and any statement by the police to the victim about their holding of a "suspect" did not dilute or corrupt that reliability, under the circumstances of this case. See *Manson* v. *Brathwaite,* supra, 116.

Further, trial counsel stated, under oath, that it was a conscious decision of trial strategy, rather than neglect, that led counsel not to seek suppression of the show-up identification. The petitioner must overcome the strong presumption that this decision on trial strategy was sound. *Levine* v. *Manson,* supra. Such a decision has specifically been held to constitute part of a defense counsel's trial strategy. *Murray* v. *Maggio,* 736 F.2d 279, 283 (5th Cir. 1984). A decision of counsel to try to discredit an identification through cross-examination rather than through a motion to suppress may be a sound decision. See *Williams* v. *Abshire,* 544 F. Sup. 315, 318 (E.D. Mich. 1982); *Commonwealth* v. *Drayton,* 386 Mass. 39, 42, 434 N.E.2d 997 (1982). "Whether to afford a witness an opportunity to rehearse his testimony at a suppression hearing, especially when the prospects of suppression are negligible, is very much a tactical decision, not easily characterized as ineffective assistance of counsel."[1]

---

[1] In two cases cited by the petitioner to support his argument that failure to file a motion to suppress an identification constitutes ineffective assistance of counsel, trial counsel either had conducted *no* pretrial investigation and was *not prepared* to proceed on a suppression motion; *State* v. *Watson,* 134 Ariz. 1, 2–3, 653 P.2d 351 (1982); or counsel failed to challenge the identification either through a motion to suppress or through cross-examination at trial. *Saltys* v. *Adams,* 465 F.2d 1023, 1028–29 (2d Cir. 1972). Neither combination of circumstances is present in this case.

*Commonwealth* v. *Florentino,* 396 Mass. 689, 691, 488 N.E.2d 403 (1986). *People* v. *Conley,* 118 Ill. App. 3d 122, 131, 454 N.E.2d 1107 (1983).

In the present case, counsel stated in a deposition that, prior to trial, she interviewed the victim and that, as a result, she believed that a motion to suppress was unlikely to be granted and that she could more successfully challenge the identification of the petitioner at trial. This was because, based on her interview of the victim, she believed that the victim had not actually seen the intruder's face and that the victim's identification would, therefore, be vulnerable. Counsel then made the conscious decision not to seek a suppression hearing in order not to "educate" the state or the witness as to the weakness of the identification or as to how she would attack it at trial.

The petitioner claims, however, that counsel's pretrial investigation with respect to the identification of him by the victim was inadequate. To succeed in his attack on the adequacy of counsel's pretrial investigation, the petitioner must show both that the investigation was inadequate, not merely imperfect; *State* v. *Barber,* supra, 161; and that, had it not been for the inadequate investigation, there is reasonable probability that the outcome would have been different. *Aillon* v. *Meachum,* supra; *Chace* v. *Bronson,* supra.

The petitioner argues that the pretrial investigation conducted by counsel was inadequate essentially because counsel failed to obtain in writing certain alleged statements of the victim to the effect that she did not see the intruder clearly at the time of the break-in. Counsel, accompanied by an investigator, interviewed the victim on one occasion. The investigator made no notes or report of the interview.

Following the positive in-court identification of the petitioner by the victim and the victim's testimony con-

cerning her prior positive identification at the show-up, counsel presented the investigator as a witness. The investigator testified that the victim indicated that at the time of the break-in she "couldn't make . . . out" the intruder's face and "couldn't identify him," and that, at the show-up, she "couldn't get a good look at" the petitioner because "his face was bent down."

The petitioner has not shown that, in the circumstances known to counsel at the time, her failure to have the alleged statements of the victim memorialized in writing constituted ineffective assistance, nor has he shown that the failure to obtain the statements in writing contributed to his conviction. Counsel interviewed the victim, presented the investigator as a witness in an effort to impeach the victim's trial testimony, visited the scene of the burglary, reviewed the state's file, interviewed witnesses in an effort to present an alibi defense and consulted an expert regarding the victim's ability to identify the petitioner properly. We find that counsel's pretrial investigation was reasonable under the circumstances known to her at the time and that her failure to attempt to have the statements memorialized in writing did not constitute ineffective assistance of counsel.

The petitioner also claims that counsel's failure to object to the in-court identification of him was ineffective assistance. In-court identification testimony need be excluded only where it is tainted by an unnecessarily suggestive out-of-court identification procedure "conducive to irreparable misidentification." *State* v. *Smith,* 200 Conn. 465, 470, 512 A.2d 189 (1986). Since we find that the out-of-court identification procedure in this case was not unnecessarily suggestive and was reliable, there was little likelihood that a motion to suppress the out-of-court identification would have been granted or that an objection to the in-court identification would have been sustained. Consequently, coun-

sel's failure to object to the in-court procedure was unlikely to have affected the outcome of the petitioner's trial. The lack of objection by counsel, therefore, did not render her assistance ineffective. The habeas court was correct in finding that the petitioner failed to show sufficient prejudice with regard to the identification of him by the victim because he did not prove that the result of his trial would have differed had his trial counsel sought suppression of either his out-of-court or in-court identification.

Finally, on the basis of his allegation of an inadequate pretrial investigation, the petitioner claims that the habeas court erred in not finding that he had ineffective assistance as to his plea of not guilty. At the habeas hearing, trial counsel stated that, prior to trial, she informed the petitioner of the victim's statements that "she had not seen the perpetrator's face and had not seen Mr. Williams' face at the time of the show-up" and of her belief that those statements "would *potentially* lead to a successful challenge to [the victim's] ability to make a legally sufficient identification." (Emphasis added.) Because he was informed of those statements, the petitioner alleges that he made his decision to go to trial, rather than to accept the state's plea offer, on a "fundamentally flawed basis."

Defense counsel averred at the habeas hearing that she told the petitioner prior to trial that she believed in the *potential* for a successful challenge to the identification, not in its certainty. Further, the habeas court concluded that, in addition to informing her client of these statements by the victim, counsel "advised petitioner that his alibi witness or witnesses would be weak . . . that the complaining witness would be a highly credible witness, and that counsel believed petitioner would be a poor witness. Counsel warned him that there was a great risk of conviction and that his exposure to a severe sentence was very high." The petitioner

elected to go to trial rather than to accept the plea bargain negotiated by counsel. Counsel was correct in informing the petitioner of both favorable and unfavorable information with respect to his chances of success at trial. We, therefore, conclude that the habeas court was correct in its judgment that the petitioner failed to prove that his plea was the result of the ineffective assistance of counsel.

There is no error.

In this opinion the other judges concurred.