[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
In his amended petition for a Writ of Habeas Corpus, the petitioner seeks to have vacated his convictions of five counts of sexual assault in the first degree and six counts of risk of injury to a minor. On June 7, 1996, the petitioner received a total effective sentence of thirty-two years.
The petition also alleges the failure to provide the petitioner with notice of his right to have his sentence reviewed.
The petition recites a series of alleged acts and omissions by his trial counsel which he claims warrant the granting of the petition on the grounds of ineffective assistance of counsel.
 STANDARD OF REVIEW
In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two pronged test to be applied in evaluating claims of ineffective assistance of counsel. In addition to being deficient, that is, not within the range of competence of lawyers with the ordinary skill and training in criminal law, the deficient performance must have prejudiced the CT Page 2966 defense.
Our appellate courts have addressed this test and elaborated upon a petitioner's burden in asserting such claims.
 "The right of a defendant to effective assistance is not, however, the right to perfect representation. State v. Barber, 173 Conn. 153, 159-60, 376 A.2d 1108 (1977); Chace v. Bronson, 19 Conn. App. 674, 678, 564 A.2d 303 (1989). He must also show "that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." Herbert v. Manson, 199 Conn. 143, 144-45, 506 A.2d 98 (1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. Levine v. Manson, supra, 640; Chace v. Bronson, supra, 678. The assistance must be viewed in light of the circumstances that existed at the time, and not with either the benefit or the distortions of hindsight. Levine v. Manson, supra. Even if that assistance is found to have been lacking in competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. Aillon v. Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989)."
 Williams v. Bronson, 21 Conn. App. 260, 263 (1990). Further, strategic or tactical choices of counsel are not subject to challenge. (Strickland, supra).
It is with these principles in mind that the court addresses the petitioner's claims.
 DISCUSSION I
One of the petitioner's claims addresses a tactical decision made by defense counsel with respect to a prosecution witness, Ann Boynton, mother of the victims of the alleged assaults. Ms. Boynton had been convicted of a felony, assault in the second degree, for attacking the petitioner with a knife. (The petitioner and Ms. Boynton had maintained a somewhat stormy and sporadic relationship).
In the course of argument over the State's motion in limine to preclude the introduction of Ms. Boynton's conviction, defense CT Page 2967 counsel was advised by the trial judge that if the conviction did come in, the State would be permitted to present evidence that the knife attack followed a threat by the petitioner to kill Ms. Boynton and that he had physically abused her on prior occasions.
Defense counsel testified that after discussing these options with the petitioner, he decided not to use the conviction lest he open the door to having his client's prior violent acts and threat disclosed to the jury.
Even the petitioner's legal expert conceded that this tactical decision could not be considered as evidence of ineffective assistance of counsel.
Nevertheless, in his brief the petitioner states that this decision was not actually a tactical one and the respondent's argument "can be accorded no weight, however — a review of the trial transcript reveals that the subject of the occasion of physical interaction was in fact inquired into by the state. Counsel for the petitioner, failed to make the concomitant inquiry into the stabbing incident from sheer error, and for no other reason."
Though the court was not provided with any transcript page reference to enable it to interpret this claim, a re-reading of the entire transcript of this witness' testimony discloses no such "inquiry" by the state.
The court rejects his claim as totally unfounded.
 II
During his cross-examination in the habeas corpus trial, the petitioner was quite forceful in stating that he would not have pleaded to a sexual assault even if it entailed serving no time.
This would seem to negate the claim that counsel's alleged failure to advise him of proposed pre-trial plea bargains deprived him "of the opportunity to obtain a significantly shorter sentence. . ." (Amended complaint, Paragraph K).
However, defense counsel testified that he advised the petitioner of all plea offers — despite his client's statement that he would not plead to a sexual assault. One of these offers was one to serve 12 years which was declined. CT Page 2968
The petitioner also claims that defense counsel rejected a plea bargain whereby he would have served 18 to 24 months without telling him of it.
This would appear to be an incredible offer and defense counsel denied ever receiving it from the State. Again, by his own statement, the petitioner would have rejected it.
There is no merit to this allegation.
 III
The petitioner makes the claim that counsel was also ineffective because he "failed to present available evidence concerning the petitioner's inability to engage in sexual activity during times alleged in the charges against him. . ."
This allegation is of dubious value since the petitioner's conviction involved a variety of sexual acts. Many of these acts would not have required him "to engage in sexual activity," which phrase the court assumes the petitioner means "to attain a penile erection."
However, defense counsel testified that after reading the pertinent medical reports and speaking with the petitioner's doctors, he would not have been able to present evidence to support this claim.
It should also be noted that the petitioner did not indicate what the "available evidence" was.
Finally, the use of the petitioner's medical records would have resulted in the disclosure of his cocaine addiction. Defense counsel felt this would have had a detrimental effect on the jury and made the tactical decision to steer clear of the records.
 IV
The petitioner further asserts this claim in his petition:
 "11. Although the petitioner was suffering from sexually transmitted disease at the times of the charges against him, defense counsel failed to seek physical examinations of the complaining witnesses and failed to demonstrate that they had CT Page 2969 no such disease;"
As was pointed in Section III above, much of the petitioner's alleged deviant behavior consisted of acts which are not usually associated with sexually transmitted diseases.
This claim is apparently premised on the theory that if the petitioner had such a disease and his victims did not, that is evidence that he did not commit a sexual assault on them.
The petitioner has presented no medical evidence to support his claim and without such evidence, it is sheer speculation to advance such a notion.
 V
On page 9[1] of his brief the petitioner claims:
 "12. At the petitioner's trial, during but not limited to the testimony of Steven Thermes on April 3, 1996, defense counsel failed to object to the introduction of inadmissible uncharged misconduct evidence and inadmissible hearsay evidence which was highly prejudicial to the petitioner;"
It is not the court's responsibility to search a voluminous trial transcript to ferret out alleged failures of counsel to object. Thus, this claim will be addressed solely as to the testimony of Steven Thermes.
Again, the specific failures to object are not recited so that the court was obliged to read some 89 pages of Mr. Thermes' testimony.
Defense counsel made repeated objections to the testimony of Mr. Thermes and at one point succeeded in eliciting the admission that one act had never been substantiated. Reference to this act came in as part of an answer to another question and the witness volunteered this item. It was too late for the defense to keep it from the jury. As this witness was presented for purposes of constancy of accusation, much of what the petitioner is apparently referring to came in on that basis.
And, it should be noted, defense counsel obtained a specific constancy of accusation charge prior to his testimony. CT Page 2970
The petitioner further complains of the failure of defense counsel to keep out testimony explaining the failure of the complaining witnesses to make their accusations for a year after entering counseling.
Defense counsel objected to this offer and his objections were originally sustained. On a third try, the evidence came in. This was a minor point and it cannot be reasonably argued that it was a significant factor in the conviction which followed.
Morever, the evidence in question was probably properly admissible in the first place.
 VI
A major component of the petitioner's submissions is the alleged failure of defense counsel to properly advise him of the procedures involved in the Jarzbek hearing, to have him present for the hearing on the State's motion to videotape the complainants' testimony, for failing to prepare properly for the hearing, and for not taking steps to have him participate effectively.
Defense counsel testified that he did discuss the process with the petitioner and that he indicated he was only interested in being present when the complainants were videotaped and not for the prior hearing on the State's motion requesting permission to videotape.
Though he did not recall the details of how he communicated with his client, he stated he did, asking questions suggested by the petitioner after re-phrasing them as to form. While the petitioner claimed he was rushed and counsel was "hurried," counsel disputes this and states he met with his client before the cross examination and discussed questions. He noted he did not ask questions proposed by the petitioner if they were inadmissible.
The petitioner's expert testified that it was not ineffective assistance if counsel had gone over the direct testimony with his client before the examination.
The trial court decision to permit videotaping was upheld by the Appellate Court in the course of affirming the petitioner's conviction. (State v. Alterisi, 47 Conn. App. 199 (1997). After CT Page 2971 reading that decision, it appears certain the presence of the petitioner would have had no effect on the outcome.
In his petition, Mr. Alterisi claims "he was denied meaningful attorney — client communication" during the taping of the testimony of the minor children. He does not specify how this damaged his case and admits he spoke to defense counsel before the cross examinations commenced. He and his former counsel disagree on this point, but it is the petitioner who bears the burden of proof in this case as this court "must employ a strong presumption of the reasonableness of that counsel's assistance." (Williams v. Bronson, supra.).
In this petition, it is also alleged that counsel was ineffective by virtue of his failure to interview or attempt to interview the complaining witnesses prior to their being videotaped. In his brief, for the first time, the petitioner has re-stated this claim to be a failure to have the minor children examined by a psychiatric expert.
This newly posited claim can be rejected on the grounds that it was not pleaded and is untimely. However, it also suffers from a serious deficiency in that it attempts to equate the alleged failure of defense counsel to a court's refusal to allow a defendant's psychiatric expert to examine minor witnesses.
Still another problem with this claim is that it assumes facts not in evidence and not even suggested by the prior proceedings. First of all, defense counsel was not examined on this point. There is no indication that the petitioner could have assumed the expense of an expert, and there is no foundation for the proposition that such an examination was appropriate and that it would have been permitted.
Returning to the original claim that it was ineffective assistance for counsel not to have interviewed the minor witnesses before the taping, it is noted that counsel was not cross examined on this point. Thus, this alleged omission may well have been a tactical decision. As such, it may have been influenced by other considerations. These may have been revealed in the course of conferences with the prosecuting attorney or other pre-trial activity.
This possible omission, considered in light of the total trial transcript, does not warrant the relief requested. After a CT Page 2972 thorough consideration of the trial evidence in this case, the transcript and the arguments briefed, the Court concludes that the petitioner has not satisfied the burden outlined above and that defense counsel was not ineffective in his defense of a very difficult case.
Therefore, the petition is denied.
 VII
The petitioner cites as an example of ineffective assistance of counsel the failure of the petitioner to receive notice of his right to sentence review, the failure to discuss that subject with him and the failure to apply for sentence review.
Reference to the transcript of the petitioner's sentencing (Exhibit B) reveals that after pronouncing sentence, the trial judge ordered that he be advised of his rights. The clerk then stated that the petitioner was being served with his notice of right to appeal, application for waiver of fees and appointment of counsel on appeal. No mention was made of sentence review.
Defense counsel testified he had no sentence review notice in his file. It was not found in the court file and no notice was filed. He recalls telling members of the petitioner's family that the appellate counsel should handle sentence review.
The petitioner testified that he never received a sentence review notice and never discussed it with appellate counsel.
In view of the fact that there is no evidence that the petitioner received the required notice and thus was deprived of that right, it is ordered that the petitioner's right to have his sentence reviewed is restored. He is granted 30 days from the date of the filing of this decision to file an application for sentence review.
Anthony V. DeMayo Judge Trial Referee