[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: PETITION FOR HABEAS CORPUS
This is a Habeas Corpus Petition wherein the petitioner, Christopher Dwyer, claims he is being illegally imprisoned in that he was deprived of the effective assistance of counsel in violation of the Sixth and CT Page 8752Fourteenth Amendments to the United States Constitution in that his counsel failed to take the following steps:
a. Counsel for the petitioner failed to request a jury charge on any lesser included offenses, although the evidence supported such a request.
b. Counsel for the petitioner took the case with inadequate time to prepare, and, as a result, was unable to interview witnesses or otherwise prepare for trial.
c. Counsel for the petitioner failed to communicate to the petitioner that it was the petitioner's decision about whether to testify, and failed adquately to advise him on whether to testify or not.
d. Counsel failed to raise a timely objection to testimony linking a firearm in the possession and control of the defendant to the bullet that killed the victim, despite the fact that no proper evidentiary foundation was laid for that evidence.
e. Counsel for the petitioner failed to seek a recess or any time to review police reports disclosed to him upon the conclusion of the direct examination of individual police officers, thus depriving the petitioner of effective cross-examination of pivotal state witnesses.
At the hearing on this petition, petitioner's counsel withdrew the claim set forth in paragraph 3e of the petition and in his post trial brief has abandoned the claim set forth in paragraph 3d of the petition.
After a trial before a jury of twelve that commenced on or about May 8, 1995, Ford, J. presiding, the defendant was convicted of murder in violation of General Statutes § 53a-54a(a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a). On September 15, 1995, the court sentenced the defendant to the custody of the Commissioner of Correction for a period of fifty years on the murder conviction and a concurrent term of five years on the weapons conviction for a total effective sentence of fifty years.
Based on the evidence adduced at trial, the jury could have reasonably found the following facts:
On July 31, 1990, the defendant was living at 36 Laurel Court, Bridgeport, with the victim, Marjorie Wright. Early that morning, the victim drove to her brother's house and asked her brother, Leeton Wright, to accompany her home. Marjorie had apparently decided to leave CT Page 8753 the defendant and wanted her brother's help in moving her things. Leeton Wright agreed.
When they arrived at the victim's residence, the defendant was sleeping in one of the bedrooms. Leeton Wright noticed a gun on the dresser of the room in which the defendant was sleeping. The defendant woke up as Marjorie began to collect her belongings. The defendant and Marjorie began to argue. Leeton Wright told his sister to just get her things and leave.
Also present in the kitchen of the house was a man referred to as "Haggler." Leeton Wright testified that Haggler was a friend of the defendant's who had been staying with the defendant and the victim for a few weeks.
The defendant emerged from the bedroom with a gun and fired one shot at Marjorie Wright, striking her in the chest. When the defendant pointed the gun at Leeton Wright, Wright and his critically wounded sister ran from the house into the street.
Marjorie Wright collapsed in the street. The defendant ran out into the street after her. Leeton Wright bent over his sister screaming, "you shot her, you shot her. She better not die!"
The defendant also tried to attend to the fatally wounded woman, crying "I'm sorry" and begging Leeton Wright to go get the gun and shoot him, too. However, when the defendant heard sirens indicating police and emergency personnel were on their way, he fled into the house and out the back door. Haggler also left the scene. Marjorie Wright died from a gunshot wound to the chest.
Some time following the shooting, the defendant fled to Jamaica. He remained in Jamaica until his extradition back to stand trial on these charges in 1994.
The petitioner remained in pretrial confinement from the time he was extradited from Jamaica in 1994 until the commencement of his trial. He was at all times represented by Assistant Public Defender William Schipul. Jury selection had begun with Mr. Schipul and, in fact, five jurors had been selected when the petitioner asked his mother and sister to find him another attorney because he felt Schipul was going to lose the case and that he, Schipul, had been talking negatively to him.
The petitioner's mother and sister went to see Attorney Dante Gallucci to see if he would take over the case. Attorney Gallucci had a telephone conversation that day with Attorney Schipul and, after an explanation of CT Page 8754 the case and its relative simplicity, he decided that he would enter his appearance. He was paid a fee of $10,000. The next day he met with the petitioner and spent five to six hours with Attorney Schipul going over his file. Gallucci was aware of Schipul's reputation for thoroughness and was satisfied that Schipul was prepared and the case had been fully investigated.
Attorney Gallucci was admitted to practice law in 1983 and immediately began to do Special Public Defender work in the Juvenile Court. He thereafter worked in the Connecticut Attorney General's office. In November of 1985 he opened a private office in Bridgeport and shortly thereafter began doing Special Defender work as well as private criminal defense work. He has handled approximately 120 felony cases in Bridgeport. In 1992 alone he tried nine criminal cases to conclusion. By 1995 he was on state contract as a Special Public Defender agreeing to handle a minimum of 36 felony cases a year. He had tried several murder cases to conclusion with relatively good results before appearing for the petitioner.
Although he did not speak to the state's witnesses before trial, Mr. Gallucci knew who they were and what they were going to say. In speaking with Attorney Schipul and the petitioner, he knew what the defense was. The petitioner claims that on the date of the shootings, but before the shooting, an individual by the street name of Haggler was in his apartment when the victim and her brother, Leeton Wright, came in. The petitioner claimed it was Haggler who had the gun and that Haggler was in fact trying to shoot the petitioner when he accidentally shot the victim. Haggler had been on the run since the shooting and his whereabouts were unknown at the time of trial. Gallucci purposely chose to ignore Haggler because he felt it was highly unlikely that he would help the defense by implicating himself and it was more likely he would support the testimony of Leeton Wright.
Attorney Gallucci did not recall if he spoke to Zoe Potter, the petitioner's other girlfriend, because he felt it was not good for the petitioner's case to bring up or emphasize any domestic strife caused by the petitioner's ongoing relationships. Attorney Gallucci also testified he had adequate time to discuss the case with the defendant at the courthouse during the trial itself, recesses and in the lockup before the trial. He described the petitioner as reasonable, intelligent and totally professing his innocence.
Attorney Gallucci's assessment of the case was that it was not complicated. There were only four persons present at the time of the shooting: the victim who was dead, Haggler who was missing, the victim's brother who would testify against the petitioner and the petitioner who CT Page 8755 would place the gun in Haggler's hands. The fact that the police subsequently, on October 18, 1990, recovered the gun, a .357 Magnum, used in this homicide from a Trevor Brown who said he had just gotten it from a person he was walking with by the name of Haggler also supported the defense.
Attorney Gallucci admitted he filed no motions as he believed Attorney Schipul had prepared the file well. He described his strategy as not to fight everything and hope that the petitioner's testimony would create a reasonable doubt. He did not request a continuance or mistrial because he did not think he needed one, and the petitioner wanted to proceed at once. The petitioner was adamant about wanting a trial and wanting it now.
Attorney Gallucci testified he knew he explained to the petitioner that it was the petitioner's right to testify or not. He did admit that he believed it was in the petitioner's best interests to testify and it was better to tell the jury that you did not do it. He believed the petitioner was intelligent enough to explain his version of the case and not lose his composure. He is sure that he would have discussed with the petitioner the risk involved in testifying would include reference to his three prior felony convictions.
Attorney Gallucci described how he prepared for cross-examination, and he specifically did not ask Leeton Wright if it was Haggler who had the gun because he knew what his answer would be and there was no reason to emphasize it. The court has reviewed the cross-examination by Attorney Gallucci of Leeton Wright contained within Petitioner's exhibit 2 and finds nothing improper about it, and it was consistent with their defense. See plaintiff's exhibit 2, pages 62-78.)
Attorney Gallucci further testified that he spoke with the prosecuting attorney, John Smirga, about the gun and Smirga was not sure he would put it in evidence because it was linked to Haggler, not the petitioner. Eventually, he did offer it, and Gallucci did not object because he felt its connection to Haggler would support the petitioner's testimony.
As far as not requesting any lesser included offense instructions, Attorney Gallucci testified that under the criminal rules he had no factual basis to request one because their defense was Haggler did the shooting, not the petitioner. The court cannot disagree with that analysis.
The petitioner then took the stand and described that while Attorney Schipul had the file he got the state to offer a sentence of 20 years suspended after 18 years. The petitioner says he replied "That's a lot of CT Page 8756 time for some who didn't do it." Attorney Gallucci was never told by anyone that there was a 20 after 18 offer. Attorney Smirga testified he was aware of no such offer, he never made one and wherein the file jacket offers are usually recorded, it simply said "N.G." Smirga said he did raise the subject of a plea with Attorney Schipul but was told by Schipul that they were not interested and wanted a trial. No one called Attorney Schipul as a witness to confirm or deny this claimed specific offer although he still works in the Public Defender's office.
Mr. Dwyer then vaguely testified that after jury selection the prosecutor gestured that he wanted to speak to Attorney Gallucci. Dwyer assumed that the prosecutor probably wanted to offer a lower sentence. This was pure speculation, and the evidence is all to the contrary. There is no evidence of any original offer that was now being lowered. The petitioner claims he asked Attorney Gallucci three or four times to talk to the prosecutor about a lower offer. There is no support for that testimony.
Attorney Smirga does recall one brief conversation with Attorney Gallucci inquiring if there was some way of resolving the case and his response was emphatically "No." That is totally consistent with the petitioner's stand with Attorney Schipul. The petitioner wanted a trial and his day in court.
The petitioner further testified he only saw Attorney Gallucci in the courthouse, that he did have a copy of Leeton Wright's sworn statement, that Attorney Gallucci did not go over witnesses' statements with him, that Gallucci never discussed lesser included offenses with him and never discussed self-defense. As to the latter two claims, there was no evidence to support either.
The petitioner claims he told Attorney Gallucci he did not want to testify. Gallucci apparently advised him it was his opinion that this was the only way to beat the case. Eventually, the petitioner said he trusted Gallucci because he was a lawyer, had tried a lot of cases and he finally agreed to testify. Simply stated, Attorney Gallucci gave his best advice and the petitioner made the decision to testify. There is simply no evidence of coercion.
On cross-examination, the petitioner admitted that he told both of his lawyers that he did not kill the victim and that is still his position.
The defendant also presented the testimony of Attorney David Bachman, a former associate in John Williams' office, as an expert in this case. He generally testified that the performance of Attorney Gallucci was below the standard of care of a reasonably skilled attorney practicing criminal CT Page 8757 law. He testified generally and specifically with reference to the four specific claims of ineffective assistance of counsel set forth in the petition.
COMPETENCY OF COUNSEL STANDARD
Be it a felony or a misdemeanor, a criminal defendant is entitled under the Sixth and Fourteenth Amendments to the federal constitution and by Article First, Section 8 of the Connecticut Constitution to effective assistance of counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792,9 L.Ed.2d 799 (1963); Arslinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006,32 L.Ed. 530 (1972); State v. Harmon, 198 Conn. 124, 130, 502 Conn. 381
(1985); Rouillard v. Commissioner of Correction, 35 Conn. App. 754, 759,646 A.2d 948, cert. denied, 231 Conn. 945, 653 A.2d 827 (1994); Falby v.Commissioner of Correction, 32 Conn. App. 438, 440, 629 A.2d 1154, cert. denied, 227 Conn. 927, 632 A.2d 703 (1993). A criminal defendant is not constitutionally entitled to error free representation. Commissioner ofCorrection v. Rodriguez, 35 Conn. App. 527, 534, 646 A.2d 919 (1994);Baez v. Commissioner of Correction, 34 Conn. App. 236, 243, 641 A.2d 147
(1994); Davis v. Warden, 32 Conn. App. 296, 302, 629 A.2d 940, cert. denied, 227 Conn. 924, 632 A.2d 701 (1993); Williams v. Bronson,21 Conn. App. 260, 263, 573 A.2d 330 (1990). "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. Strickland v. Washington, 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Lozada v. Warden, supra, 943; Williams v. Warden, 217 Conn. 419, 422, 586 A.2d 582 (1991); Aillonv. Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094 (1989); Jenkins v. Commissioner ofCorrection, 52 Conn. App. 385, 393, 726 A.2d 657, cert. denied,249 A.2d 920, 733 A.2d 233 (1999). Phrased otherwise, it has been stated that "[a] petitioner claiming ineffective assistance of counsel must prove (1) that his attorney made errors so serious as to cease functioning as counsel, and (2) that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Hill v. Lockhart, 474 U.S. 52, 57, 106 S.Ct. 366,88 L.Ed.2d 203 (1985); Phillips v. Warden, 220 Conn. 112, 132, 595 A.2d 1356
(1991); Falby v. Commissioner of Correction, supra, 440; Ostalaza v.Warden, 26 Conn. App. 758, 761, 603 A.2d 768, cert. denied, 222 Conn. 906,608 A.2d 692 (1992). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged CT Page 8758 conduct, and to evaluate the conduct from counsel's perspective at the time. Strickland v. Washington, supra, 466 U.S. 689; Johnson v.Commissioner of Correction, 222 Conn. 87, 92, 608 A.2d 667 (1992), quoting Johnson v. Commissioner of Correction, 218 Conn. 403, 425,591 A.2d 407 (1991). A reviewing court must indulge a Strong presumption that counsel's conduct falls within the wide range of professional assistance. Strickland v. Washington, supra, 466 U.S. 689; Safford v.Warden, 223 Conn. 180, 193, 612 A.2d 1161 (1992); Veal v. Commissioner ofCorrection, 54 Conn. App. 384, 385, 735 A.2d 833, cert. denied,251 Conn. 907 (1999); Cooper v. Commissioner of Correction,53 Conn. App. 495, 496, 732 A.2d 788 (1999); Rodriguez v. Commissioner ofCorrection, supra, 34 Conn. App. 536; Baez v. Commissioner ofCorrection, supra, 34 Conn. App. 244. If counsel's decision was an exercise of reasonable professional judgment arrived at after weighing the pros and cons, his decision would fall within "the amorphous zone known as `trial strategy' or `judgment calls' which will not be second guessed by a reviewing court. Jones v. Estelle, 632 F.2d 490, 492 (5th
Cir. 1980), cert. denied, 451 U.S. 916 (1981); State v. Summerville,29 Conn. App. 162, 176k, 614 A.2d 842, rev'd on other grounds,229 Conn. 397, 641 A.2d 1356 (1994). The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Siano v. Warden, 31 Conn. App. 94, 97,623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993); Danielsv. Warden, 28 Conn. App. 64, 69-70, 609 A.2d 1052, cert. denied,223 Conn. 924, 614 A.2d 820 (1992).
Let us now specifically deal with the remaining claims of the petitioner contained in paragraph 3 of his petition. In paragraph 3a he claims that petitioner's counsel failed to request a jury charge on any lesser included offense, although the evidence supported such a request. The problem with this allegation is simply that there is no evidence to support it or to support any lesser included offense charge. Practice Book section 42-18
requires that for each separate request to charge there be included "the evidence to which the proposition would apply." The proposition obviously applies to the proposition of law to which the charge is directed.
In this case, the defendant has always maintained that he did not kill the victim, and at the hearing on this petition, maintained his complete innocence. He has always maintained that a person named Haggler was the shooter. Any request for a lesser included offense would have required an admission by the petitioner that it was his act that lead to the victim's death. There was no evidence of that and that claim has no merit.
The second claim of the petitioner contained in paragraph 3b of his petition is that petitioner's counsel took the case with inadequate time CT Page 8759 to prepare and, as a result, was unable to interview witnesses or otherwise prepare for trial.
The court cannot analyze this claim in a vacuum but must look at the circumstances that existed at the time of petitioner's trial. The victim of this homicide died on July 31, 1990, and the petitioner was not extradited until the spring of 1994. He was in pretrial conferences until his trial in May of 1995.
The trial had commenced with jury selection at a time the petitioner was represented by Assistant Public Defender William Schipul. It was the petitioner who interrupted the proceedings by asking his relatives to hire new counsel for him. No claim is made that Attorney Schipul was not prepared for trial or that he had not fully investigated the matter. The petitioner simply did not want Schipul any more, and it was his right to fire him and have new counsel, which is what he did.
When Attorney Gallucci entered his appearance, he spoke with the defendant several times, knew his version of the events and then spent five to six hours with Attorney Schipul going over the case. He had to complete jury selection, had a weekend before evidence was to begin and felt he was prepared. He also testified that the petitioner wanted to continue the case then and now. Attorney Gallucci described the case as a simple and uncomplicated one. Obviously, all homicide cases are serious because of the loss of life and the defendant's exposure, but often they are simple from a presentation point of view.
The court agrees that the case was simple on a comparative basis and petitioner's present counsel also agrees. He states, on page 15 of his post trial brief, that "What took place is clear. A young lawyer was approached by a family to try a very brief and simple murder case."
The case boiled down to two witnesses; the victim's brother, Leeton Wright, who described the petitioner as the killer and the petitioner who described Haggler as the killer. The court again finds little or no evidence for this claim and finds the petitioner has failed in sustaining its burden of proof.
The petitioner's final claim is contained in paragraph 3c of the petition and will be quoted verbatim:
 "Counsel for petitioner failed to communicate to the petitioner that it was the petitioner's decision about whether to testify, and failed adequately to advise him on whether to testify or not."
CT Page 8760 The reason the court is quoting this section verbatim is that somehow in the petitioner's post trial brief he has transformed that basic claim into a new claim "that counsel failed to adequately advise petitioner about whether to enter a plea." (See page 1 of Petitioner's Brief.) There is no such claim or no such language within the petition dated February 9, 1998. The file does not contain any amended petition including this claim and no oral request to amend was made at the hearing. Granted there was testimony offered on the subject without any objection by counsel for the respondent, but there was no amendment.
The court's first inclination was not to decide this issue based on the pleading problem. On reflection, the court on its own will amend paragraph 3c of the petition to include this claim so that the matter will have resolution.
The court will begin this discussion based on the petition as originally filed. Petitioner claims (1) that trial counsel failed to advise him that it was his (petitioner's) decision on whether to testify or not and (2) failed to adequately advise him on whether to testify or not. The evidence is to the contrary. Attorney Gallucci testified he did tell petitioner it was his decision to testify or not and he is sure that the explained to him that his prior record would become a matter of record. In the petitioner's own testimony at the hearing he said his reluctance to testify at trial was in part that he knew his prior record would be used. As to the second prong of this claim, it is clear that Attorney Gallucci did advise the petitioner rather strongly that he felt he should testify and tell the jury his version of the events. Although he may have initially been reluctant to testify, the petitioner did acknowledge at the hearing that he eventually trusted his lawyer's advice, knew that he had tried a lot of cases and agreed on his own to accept his attorney's advice and testify. Therefore, the court finds no support for the original allegation contained in paragraph 3c.
The final claim as a result of the court's amendment is that defense counsel failed to advise or convey to the petitioner the state's claimed offer to negotiate a plea. I say "claimed" because there never was an offer. In order to decide this issue, again reference must be made to the history of the case as well as the testimony. Most of the evidence on this subject came from the petitioner, and his credibility must be judged just like any other witness.
The petitioner is the only one to testify that before trial Attorney Schipul conveyed to him an offer of 20 years suspended after the services of 18 years. He claimed that Attorney Gallucci also mentioned that offer. Attorney Gallucci denied any knowledge of any offer. Attorney Schipul was never called as a witness to corroborate the petitioner's CT Page 8761 claim although he still works in this building. The Assistant State's Attorney who handled the original case testified that he offered no plea agreement, was aware of none and the file jacket where offers are usually set forth did not contain one. He claims he did raise the subject with Attorney Schipul but was advised they were not interested and wanted a trial.
This is all consistent with the history of the case. The petitioner wanted a trial and was not interested in admitting his guilt and doing time. That is clearly the state of affairs when Attorney Gallucci entered the case. The court does not find it credible that there ever was an offer of 20 after 18.
The petitioner's further testimony on this subject is vague at best. He claims that Attorney Smirga somehow gestured that he wanted to talk to Attorney Gallucci, and the petitioner assumed that he wanted to make a lower offer. All of the evidence is contrary to that. The petitioner testified that he asked Attorney Gallucci three or four times to seek a lower offer, wherein Attorney Gallucci testified that never happened.
The only evidence in any way favorable to the petitioner is that some time shortly after Attorney Gallucci entered the case Attorney Smirga asked generally if there was any way of resolving the case and was told "no." That is totally consistent with the history of the case. There was no offer or plea negotiations when Attorney Schipul was representing the petitioner because the petitioner wanted a trial. When Attorney Schipul apparently told the petitioner that he would probable lose the case, he was fired. Attorney Gallucci was hired because the petitioner wanted a trial, and Attorney Gallucci told him there was a good chance he could win. That is what the petitioner wanted to hear and that is what he got, a trial. The court finds no credibility to the petitioner's claim that he asked his counsel to seek or negotiate a plea.
For all the foregoing reasons, the petition is denied.
GORMLEY, J.