[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF THE CASE
In this habeas corpus petition, the petitioner alleges ineffective CT Page 7026 assistance of counsel, that his guilty plea was not intelligent, knowing and voluntary, and that his constitutional rights were infringed by the West Haven police in the course of an interview following his arrest.
The respondent has denied the ineffective assistance allegations. On the two remaining issues, the respondent argues that they are not subject to habeas corpus review and are precluded by procedural default since they were not raised at sentencing nor on direct appeal.
 STANDARD OF REVIEW
In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two pronged test to be applied in evaluating claims of ineffective assistance of counsel. In addition to being deficient, that is, not within the range of competence of lawyers with the ordinary skill and training in criminal law, the deficient performance must have prejudiced the defense.
Connecticut courts have addressed this test and elaborated upon a petitioner's burden in asserting such claims:
 "The right of a defendant to effective assistance is not, however, the right to perfect representation. State v. Barber, 173 Conn. 153, 159-60, 376 A.2d 1108
(1977); Chance v. Bronson, 19 Conn. App. 674, 678, 564 A.2d 303 (1989). He must also show "that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." Herbert v. Manson, 199 Conn. 143, 144-45, 506 A.2d 98
(1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. Levine v. Manson, supra, 640; Chance v. Bronson, supra, 678. The assistance must be viewed in light of the circumstances that existed at the time; and not with either the benefit or the distortions of hindsight. Levine v. Manson, supra. Even if that assistance is found to have been lacking in competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. Aillon v. Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989)." Williams v. Bronson, 21 Conn. App. 260, 263 (1990). Further, strategic or tactical choices of counsel are not subject to challenge." (Strickland, supra).
CT Page 7027 When a petitioner's conviction is based on a guilty plea, he must show that there is a reasonable probability that, had counsel not committed error, he would have insisted on going to trial. This determination depends, in turn, on whether the course of action not taken would, to a reasonable probability, have led to a better outcome for the petitioner had he elected to go to trial. Copas v. Warden, 234 Conn. at 156;Baillargeon v. Commissioner, 67 Conn. App. 716, 722-23 (2002), citingHill v. Lockhart, 474 U.S. 52, 106 S.Ct. 366, 370 (1985). The petitioner's claims must be evaluated in light of these standards.
With respect to the constitutional challenges, the respondent cites Connecticut case law to the effect that the failure to raise such issues on appeal or at trial precludes habeas corpus review. See Jackson v.Commissioner of Correction, 227 Conn. 124 (1993).
Allegations that counsel's failure to raise such challenges at trial or on appeal are still subject to the "cause and prejudice" standard ofStrickland. Johnson v. Commissioner of Correction, 218 Conn. 403 (1991).
 DISCUSSION I.
At the root of the petition is the petitioner's statement to the West Haven police after his arrest on a warrant on February 14, 1999. The petitioner was not yet 15 years of age, his date of birth being October 13, 1984.
The petitioner and his mother, Yvonne Dumas, each first executed the standard waiver forms for a juvenile and parent. Each form contains the Miranda warnings.
When the interview was commenced, the warnings were repeated by Officer Howard, first to Ms. Dumas and then to the petitioner. The petitioner's grandmother, Mabel Dumas was also present and, with his mother, was present throughout the interview.
After the interview had proceeded for about 16 minutes, the petitioner terminated the interview and spoke privately with his mother and grandmother.
After about 13 minutes, the petitioner indicated he wished to proceed and the process was resumed. It was in the course of this resumed portion of the interview that the petitioner admitted he was the person who shot the victim. CT Page 7028
It should be noted that the police were aware that the petitioner had been lying in his answers prior to the termination. They had compiled sufficient data to procure the arrest warrant, having interviewed several witnesses, including eye witnesses.
A review of the evidence compiled compels the conclusion that the state could probably have convicted the petitioner of murder without his statement of February 14.
In view of the signed waivers, the repeated warnings and the presence of both his mother and grandmother throughout the interview the court concludes that the statement was voluntary. Thus, it is difficult to envision a viable motion to suppress this statement. And, the allegation that counsel's failure to file such a motion did not constitute ineffective assistance must be rejected.
 "Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar."
Johnson v. Commissioner, supra, at 420, citing Reed v. Ross, 468 U.S. 1,15 (1984).
The petitioner argued at trial that his mother had been medicated at the time of this episode and was subsequently hospitalized. This evidence was offered to support the theory that she was not competent to act as a parental guardian and thus the petitioner was disadvantaged. of course, the grandmother was also present throughout and the police interviewer did not observe anything to suggest Ms. Dumas was under the influence. In fact, he felt she was "well informed" about the whole process.
The petitioner also argued that both his mother and grandmother lacked the sophistication to properly advise him and evaluate his situation and thus, his waiver of rights was not intelligent, knowing and voluntary.
The court knows of no case law to support the petitioner's contention. If his theory were enacted into law or adopted by the courts, every police station would have to be staffed by a skilled amicus curiae who would have to interview parents to determine their competency to advise their children. Respondent cites cases, rejecting such a proposition. (In re Jonathan M, 46 Conn. App. 545, 550 (1997); In re Enrique S.,32 Conn. App. 431, 436 (1993).
A reading of the transcript of the police interview reflects a serious CT Page 7029 effort on the part of the two detectives involved to exercise great care in addressing the petitioner, his mother and grandmother and in the actual interview.
As noted above, it was only after the petitioner spoke to his mother and grandmother privately in the middle of the questioning that he admitted his participation. The petitioner now complains that they pressured him to "tell the truth." The petitioner's statement was not coerced and none of his rights were infringed in the course of its production.
 II.
The court next turns to the claim of ineffective assistance of counsel, applying the standard of review enunciated above.
 A.
With respect to the alleged failure by counsel to move to suppress the confession, in light of the court's conclusions in Section I, this claim must be rejected. Such a motion would, in all likelihood, have been denied. There was a solid record to support the voluntary, knowing and intelligent waivers.
With a solid case of murder facing the petitioner, attacking the confession on the grounds that the guardian was incompetent, in the absence of case law, would be a "shot in the dark" at best.
The major risk involved in these avenues is that one may foreclose the possibility of effecting a plea reduction to manslaughter. In this instance, counsel did quite well by the petitioner. His offense was murder, pure and simple and effecting this charge reduction was a major accomplishment.
Counsel's effectiveness is not measured by the amount of paper he generates and, as noted above in Section I, counsel cannot be faulted for failing to raise issues which have no merit. Johnson v. Commissioner, supra.
The respondent argues that decisions such as this one, a motion to suppress, is properly one of defense strategy and is not subject to challenge under the Strickland standard. The court agrees with the respondent's claim, but in addition, defense counsel testified that he discussed the case in detail with the petitioner's grandmother who acted as a "go between" with him and his counsel. He also recalled discussing the case and possible defenses, concluding that self defense was not a CT Page 7030 viable route to follow.
A further flaw in the petitioner's argument is that he has not demonstrated that he was prejudiced by counsel's failure to move to suppress his statement. First, the motion would probably have failed. A likely result would have been the refusal of the state's attorney to reduce the charge. If one were to assume the most optimistic scenario — that the motion would have been granted, the petitioner would still be faced with compelling evidence to support a murder conviction. Firing three shots at an unarmed victim whom you have called to "step outside" is not apt to lead to an acquittal and probably would not produce a manslaughter conviction. The likely result would have been a murder conviction — exactly what the petitioner's defense counsel sought to avoid and did avoid.
 B.
In the closing paragraph of his brief, the petitioner "believes that he would have fared better initially by going to trial than by the plea route he actually followed." The court seriously doubts that the petitioner does believe that, but he goes on to blame his conviction on the police, his mother, his grandmother, and his trial attorney.
In his testimony at the habeas corpus hearing, the petitioner said little to support any claim of coercion. He admitted that his counsel told him he would get more time if he went to trial — an accurate assessment then and now. He also admitted he had no witnesses for counsel to find and interview, and recalled his counsel asking him about the persons who had given statements to the police — naming them. While he said he had no memory of time or sentence discussions, his mother and grandmother testified that such discussions took place. And, there was a detailed plea canvass when he changed his plea.
 III.
Turning finally to the petitioner's claims as set forth in paragraphs 4 and 11 of the petition, the respondent urges the court to enter judgment on these counts.
While the court has addressed them in connection with the ineffective assistance allegations, they should be addressed here as well.
The claims are that the petitioner's guilty plea was not voluntarily and intelligently made and that the West Haven police violated his constitutional rights during his interrogation. CT Page 7031
The respondent argues that since these issues were not raised before the trial court at sentencing nor on direct appeal, they should be treated as having been defaulted.
The petitioner has not alleged such cause or prejudice as would justify the default (Section 23-31 (c) of the Practice Book).
Judgment may enter for the respondent on those two counts.
 CONCLUSION
The court finds that the performance of defense counsel was well within the range of competence of criminal lawyers in the area. In fact, the court feels compelled to comment that counsel achieved an excellent result for his client.
The petitioner has not sustained his burden on the petition as to ineffective assistance and in light of the result obtained by counsel, he has not demonstrated that he was in any way prejudiced by counsel's efforts.
The petition is dismissed and judgment may enter for the respondent.
Anthony V. DeMayo, J.T.R.