[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner Juan Maldonado has filed a petition for Writ of Habeas Corpus. He claims in Count One ineffective assistance of counsel because of the failure to raise the alternative defense of extreme emotional disturbance. Count Two claims ineffective assistance of counsel for failure to move to suppress defendant's confession.
The evidence has established the petitioner was convicted by a three-judge panel on October 18, 1996 of murder; possession of a sawed-off shotgun; and assault in the second degree. On March 7, 1997 he was sentenced to fifty years on the murder conviction, and five years on each of the other charges to run consecutive, and to be served concurrent to each other for a total effective sentence of fifty-five years.
The petitioner had a very unstable, childhood and family background. Psychiatric problems for the petitioner became apparent when he was sexually assaulted by a neighbor, "Ramon", about age 5 or 6, and he shortly thereafter was treated by a psychiatrist for hallucinations, panic attacks, and voices he heard which told him to do things. He was treated at mental institutions and prescribed medication to treat his hallucinations and voices he heard from a Ouiji Board.
In July 1994 the petitioner was living with his girlfriend, Marisol Santiaga, on Bond Street, in Hartford, Connecticut. Shortly before the incident on July 29, 1994 the petitioner claimed the Ouiji Board told him Marisol was cheating on him with the victim. He also claimed other voices from a "Shadow Man" caused him to become jealous and agitated because of her infidelity. The petitioner then got a shotgun to confront the victim, and because of his jealousy, and the voices he heard he shot and killed the victim. The petitioner then fled to Passaic, New Jersey, where he remained until he was returned to Hartford by the Hartford Police Department. On January 23, 1995 he signed a voluntary written statement in which he related his involvement in the incident. CT Page 15334-ap
Attorney Martin Zeldis was appointed as the public defender of the petitioner. He had been a public defender since 1984, and he has been involved in over thirty trials which included seven murder trials. He was of the opinion the petitioner was insane at the time of the incident and that a mental illness defense was the appropriate trial strategy. He also felt that the confession signed by the petitioner was subject to being questioned, but it also supported his trial strategy of a mental illness defense. A suppression of the confession would have impacted the opinion of two psychiatrists who were of the opinion the petitioner at the time of the incident was insane. Extreme emotional disturbance was never intended as a defense because of the mental illness of the petitioner. He also considered that the mental illness defense would result in a commitment to a mental institution, whereas the extreme emotional defense would result in incarceration. The petitioner prior to trial was advised by Attorney Zeldis of the trial strategy and he agreed with the insanity defense.
The petitioner contends that despite substantial testimony regarding his mental illness at the trial the three-judge panel found that he possessed the intent to cause the death of the victim. The panel then concluded the evidence did not support the affirmative defense of mental disease or defect. The issues in this habeas relate to the information available to defense counsel prior to the trial, and not the conclusions reached by the three-judge panel.
The petitioner also argues that he acted out of jealousy which caused him to be unable to control his emotions, and therefore his counsel should have pursued the defense of extreme emotional disturbance. Such a defense would be inconsistent with the insanity defense relied upon by Attorney Zeldis. It also would not be purported by any expert, and it would refute the opinions rendered by two reputable psychiatrists who testified as expert witnesses regarding the insanity defense.
Dr. James Merikangas, a neurologist and psychologist, was presented as an expert witness for the petitioner. His first contact with the petitioner was April 24, 2001 about seven years after the crime was committed. His opinion was based upon a review of the petitioner's confession, the police reports, the transcript of the trial, his past medical reports, and his interview. He concluded the petitioner was not insane at the time of the incident, and that he acted out of jealousy and anger, and therefore extreme emotional disturbance was a valid defense. The conclusion reached by this witness is contrary to the opinions rendered by the psychiatrists who testified at the trial of the petitioner. At the trial, Attorney Zeldis had no expert opinions to support a claim of extreme emotional disturbance, and he relied upon the CT Page 15334-aq two psychiatrists who testified at the trial in support of the insanity defense. This court does not accept the opinion of this expert, and finds Attorney Zeldis acted reasonably and logically in relying on the insanity defense.
Dr. Donald R. Grayson, a psychiatrist, testified in the trial of the petitioner. His written report dated September 14, 1995 refers to the mental health of the petitioner prior to the incident. The prior history indicated he had a psychotic illness with disorganized, delusional and paranoid thinking, hallucinations and depression. At the time of the shooting he concluded the petitioner was in a psychotic state as a result of his chronic paranoid schizophrenic illness, and as a result he lacked the capacity to appreciate the wrongfulness of his conduct. Dr. Grayson at this habeas hearing testified that extreme emotional disturbance requires a person to be normal at the time of the incident and that defense would not apply to the petitioner who was psychotic. Extreme emotional disturbance is a legal term which does not reach the same level as insanity.
Dr. Peter Zerman, a psychiatrist at the Institute of Living, also testified in the trial of the petitioner. His report dated July 5, 1995 rendered an opinion to Attorney Martin Zeldis regarding the petitioner's psychiatric evaluation prior to his trial. Dr. Zerman advised Attorney Zeldis the petitioner was in a psychotic state as a result of his paranoid schizophrenic illness at the time of the crime, and as a result he lacked substantial capacity to appreciate the wrongfulness of his conduct. Therefore, extreme emotional disturbance was not a proper defense at his trial.
Attorney William Dow, an experienced criminal trial lawyer, was presented as an expert witness for the petitioner. He reviewed the trial transcript, the psychiatric information available to trial counsel, and the statement of the petitioner. He concluded that a strong insanity defense existed and the trial strategy of Attorney Zeldis could not be construed as ineffective. His testimony does not support the claims of the petitioner of ineffective assistance of counsel.
In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth a two pronged test to be applied in evaluating claims of ineffective assistance of counsel. In addition to being deficient, that is, not within the range of competence of lawyers with the ordinary skill and training in criminal law, the deficient performance must have prejudiced the defense.
Connecticut courts have addressed this test and elaborated upon a CT Page 15334-ar petitioner's burden in asserting such claims:
"The right of a defendant to effective assistance is not, however, the right to perfect representation. State v. Barber, 173 Conn. 153, 159-60,376 A.2d 1108 (1977); Chance v. Bronson, 19 Conn. App. 674, 678,564 A.2d 303 (1989). He must also show "that this lack of competency contributed so significantly to his conviction as to have deprived him of a fair trial." Herbert v. Manson, 199 Conn. 143, 144-45, 506 A.2d 98
(1986). The reviewing court must employ a strong presumption of the reasonableness of that counsel's assistance. Levine v. Manson, supra, 640; Chance v. Bronson, supra, 678. The assistance must be viewed in light of the circumstances that existed at the time, and not with either the benefit or the distortions of hindsight. Levine v. Manson, supra. Even if that assistance is found to have been lacking in competency, the petitioner bears the further burden of showing that there is a reasonable probability that, were it not for the deficiency of counsel, the result of the trial would have been different. Aillon v. Meachum, 211 Conn. 352,357, 559 A.2d 206 (1989)." Williams v. Bronson, 21 Conn. App. 260, 263
(1990). Further, strategic or tactical choices of counsel are not subject to challenge. (Strickland, supra). The petitioner's claims must be evaluated in light of these standards.
This court finds that Attorney Zeldis was a competent attorney who made strategic or tactical decisions in defending the petitioner which were reasonable and logical under the circumstances of the case. Therefore the petitioner has failed to sustain his burden of proving trial counsel's performance fell below an objective standard of reasonableness or that there was a reasonable probability that but for trial counsel's allegedly deficient performance, the result would have been different.
For the foregoing reasons the petition is denied.
 ___________________ Howard F. Zoarski Judge Trial Referee
CT Page 15334-as